IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM C. BOGACZ,          )
                             )
          Plaintiff,      )
                             )
                             )     Civil Action No. 08-01654
          v.             )
                             )
                             )
MTD PRODUCTS, INC, and     )
LAWN AND GARDEN SERVICE    )
COMPANY,                 )
                             )
          Defendants.   )

## **MEMORANDUM OPINION**

CONTI, District Judge.

Pending before this court is the motion for summary judgment (Docket No. 33) filed by

defendants MTD Products, Inc. ("MTD") and Lawn and Gardens Service Company (together

with MTD, "defendants").  Plaintiff William C. Bogacz ("Bogacz" or "plaintiff") filed this civil

action asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et

seq. ("ADEA") and violation of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)

("OWBPA"), on behalf of himself as well as on behalf of a class.  Plaintiff initially filed his

ADEA claims with the Equal Employment Opportunity Commission ("EEOC").  On October 8,

2008, the EEOC issued plaintiff a right to sue letter.  Defendants seek judgment in their favor by

reason of a release executed by plaintiff.  After reviewing the record, considering the

submissions of the parties, viewing all disputed facts in plaintiff's favor and drawing all

reasonable inferences in plaintiff's favor, the court concludes that because the release at issue

can reasonably be read to bar plaintiff from challenging the validity of the release, the release is invalid and plaintiff's ADEA claims can go forward.   Accordingly, the court will deny defendants' motion for summary judgment.

## Procedural Background

On December 3, 2008, plaintiff filed a complaint with this court alleging claims against defendants for disparate treatment under the ADEA and asserting that a signed waiver of his ADEA claims was invalid under the OWBPA. (Compl. (Docket No. 1) ¶¶ 52-54, 56-59.)  In lieu of an answer to plaintiff's complaint, defendants filed a motion to dismiss on December 29, 2008. (Docket No. 9.)  Plaintiff filed his opposition on January 20, 2009. (Docket No. 17.)  A hearing was held before this court on defendants' motion to dismiss on April 28, 2009, at which time the motion to dismiss was denied with respect to the release of plaintiff's claims.  Limited discovery and summary judgment briefing were scheduled with respect to the validity of the release.  (Defs.' Mem. in Supp. of Mot. for Summ. J.  (Docket No. 34), Ex. A ("4/28/2009 Hr'g Tr.") at 7.)  The motion to dismiss was also denied, without prejudice, with respect to the defendants' argument that the charge filed with the EEOC was insufficient to support a class action.  Defendants, if the court determines the release is invalid, may renew its motion relating to the insufficiency of the EEOC charge.  (4/28/2009 Hr'g Tr. at 6-7.)  On May 18, 2009, defendants filed an answer to plaintiff's complaint limited to the issue whether there was a valid release of plaintiff's claims. (Docket No. 29.)  The instant motion for summary judgment was filed on July 30, 2009. (Docket No. 33.)

## Factual Background[1]

Plaintiff was hired by MTD as a regional manager in 1983. (App. to Defs.' Mot. for Summ. J. (Docket No. 36), Ex. 1 ("Dep. of Pl.") at 13.)  By the time of his separation in July 2006, plaintiff was in the position of district sales manager. (Dep. of Pl. at 22.)  Prior to working at MTD, plaintiff received an AA degree in marketing from the Community College of Allegheny County. (Id. at 7.)  Following college, he worked as a sales representative for Mattel Toys. (Id. at 11-13.)  He then worked as a salesman for Wheel Horse Tractor. (Id. at 10.)

On July 26, 2006, plaintiff was terminated from employment with MTD. (Dep. of Pl. at 24.)  In connection with his separation from employment, MTD offered Bogacz a "Separation Agreement and Release."  (App. to Defs.' Mot. for Summ. J., Ex. 3 (the "Release").)  The Release offered plaintiff a salary continuation from July 26, 2006 through January 5, 2007, compensation for sixteen days of unused vacation, and continuation of health insurance coverage and premium payments through January 5, 2007. (Release ¶ 2). To receive the benefits, the agreement stated that plaintiff must, among other things:

> **waive, release, and promise** never to assert any or all claims that you have or might have against the Company, it's predecessors, parent corporations, subsidiaries, affiliates, related entities, officers, directors, shareholders, agents, attorneys, employees, successors, or assigns, arising from or related to your employment and/or the termination of your employment. These claims include, but are not limited to, any and all claims, causes of action, suits, claims for attorneys' fees, damages or demands; all claims of discrimination, on any basis, including, without limitation, claims of race, sex, age, ancestry, national origin, religion, and/or

---

1.      The court notes plaintiff's objection to the combined statement of material facts filed by MTD on December 7, 2009. (Docket Nos. 49, 50.)  Plaintiff requested that the court consider plaintiff's version of the combined statement in deciding this motion for summary judgment, and it has done so.

> disability discrimination; any and all claims arising under federal, state and/or local statutory, or common law, such as, but not limited to, Title VII of the Civil Rights Act as amended, including the amendments to the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, Ohio's laws against discrimination; any and all claims arising under any other state and/or local anti-discrimination statute and the law of contract and tort; and any and all claims, demands and causes of action including, but not limited to, claims of breach of public policy, unjust discharge or breach of contract. You further **waive, release, and promise** never to assert any such claims, even if you presently believe that you have no such claims.

(Id. ¶ 4). Under the terms of the Release plaintiff had twenty-one days to accept the agreement and he was advised to "consult with an attorney of [his] own choosing to discuss all aspects of the Agreement." (Id. ¶ 9(a)). Under the Release plaintiff had seven days after acceptance to revoke his acceptance.  (Id. ¶ 9(b)).

When plaintiff received the document via certified mail, he contacted an attorney to obtain a recommendation for another attorney. (Dep. of Pl. at 27, 35.)  The attorney recommended that plaintiff contact the EEOC.  (Id. at 35.)  Plaintiff talked to Mr. Dean at the EEOC who read the Release and "told [plaintiff] that [plaintiff] could not give up [his] rights by signing this agreement.  He said that there's Federal Laws that protect [plaintiff].  And he said that [the Release] was illegal.  And he said [the Release] wasn't worth the paper that it was written on." (Id. at 40.)  Near the end of the allotted twenty-one days, plaintiff called Jim Leary, the vice president of human resources for MTD, to ask for an employee handbook and to ask why he only had twenty-one days to sign the agreement. (Id. at 27-29.)

Plaintiff testified that he understood paragraph two of the Release to continue his salary through January 5, 2007, entitle him to pay for his unused vacation and continue his health

benefits. (Id. at 32-33.)  He further testified that he understood paragraph three to mean that if he did not sign the agreement he would not get pay or termination benefits and paragraph four to mean that if he signed, he would "not be able to sue the company." (Id. at 33-34.)  Plaintiff signed the Release on August 16, 2006, and his signature was witnessed by his wife, Eileen Bogacz. (Id. at 26.)  Before signing, he crossed out the word "sixteen" in paragraph 2(b) and inserted "seventeen" to extend the number of days of unused vacation from sixteen to seventeen days and initialed the change. (Id. at 30; Release ¶ 2(b).)  He testified that he signed the Release because he believed that he had "nothing to lose" pursuant to Mr. Dean's statements, and he could take his benefits and later sue. (Dep. of Pl. at 42.)  Plaintiff received all the benefits due under the Release, including payment for seventeen days of unused vacation. (Id. at 31-33.)

### Standard of Review

Federal Rule of Civil Procedure 56 (c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c).

The nonmoving party must point to specific affirmative evidence in the record, rather than rely upon conclusory or vague allegations or statements.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Such concrete evidence must be provided for each element of each of the claims, and the evidence must be such that a reasonable fact finder could find in that party's favor at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "A nonmoving party, like plaintiff, must 'designate specific facts showing that there is a genuine issue for

trial.'" <u>Orenge v. Veneman</u>, No. 04-297, 2006 WL 2711651, at *2 (W.D. Pa. Sept. 20, 2006)

(quoting <u>Celotex</u>, 477 U.S. at 324).

    A motion for summary judgment will not be defeated by the mere existence of some

disputed facts, but will be defeated when there is a genuine issue of material fact.  <u>Anderson</u>, 477

U.S. at 248.  In determining whether the dispute is genuine, the court's function is not to weigh

the evidence or to determine the truth of the matter, but only to determine whether the evidence

of record is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u> at

249.  The court may consider any evidence that would be admissible at trial in deciding the

merits of a motion for summary judgment.  <u>Horta v. Sullivan</u>, 4 F.3d 2,8 (1st Cir. 1993); <u>Pollack</u>

<u>v. City of Newark</u>, 147 F. Supp. 35, 39 (D.N.J. 1956), <u>aff'd</u>, 248 F.2d 543 (3d Cir. 1957), <u>cert.</u>

<u>denied</u>, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is

entitled to consider exhibits and other papers that have been identified by affidavit or otherwise

made admissible in evidence").

<u>**Analysis**</u>

    Defendants argue that the Release served as a valid waiver of plaintiff's ADEA claims.

Defendants suggest that plaintiff's ability to understand the Release should be judged from a

subjective standard and that plaintiff affirmed that he understood the provisions of the Release

before signing. Defendants further argue that the release does not ban EEOC charges or a

challenge to the validity of the Release under the OWBPA, but that even if it did, only the

provision banning those actions would be unenforceable.[2]  In conclusion, Defendants assert that

the Release meets all the requirements of the OWBPA and is also valid under Pennsylvania law.

_____

2.      Plaintiff does not assert that the Release could reasonably be read to ban EEOC charges.

*1.*     ***The Statutory Requirements of the OWBPA***

Pursuant to the ADEA, as it is effectively amended by the OWBPA, an individual cannot waive any ADEA right or claim unless the waiver is "knowing or voluntary." 29 U.S.C. § 626 (f)(1). At a minimum, to be given effect as a waiver of ADEA claims, a release must satisfy the eight statutory requirements set forth in 29 U.S.C. § 626 (f)(1)(A)-(H). A waiver by an individual of ADEA claims must: be "written in a manner calculated to be understood by such individual, or by the average individual eligible to participate"; "refer[] to rights or claims" arising under the ADEA; "not waive rights or claims that may arise" in the future; be "in exchange for consideration in addition to anything of value to which the individual already is entitled"; advise the individual "in writing to consult with an attorney"; provide at least twenty-one days to consider the agreement, or forty-five days if offered pursuant to a reduction in force; provide a seven-day period to revoke; and, if proposed to the individual in connection with a reduction in force or exit incentive program, inform as to the eligibility as to class, unit, and time limits and the job titles and ages of all individuals eligible or selected for the program and job titles and ages of those not selected for the program. 29 U.S.C. § 626 (f)(1)(A)-(H).

Defendants, as the party asserting the validity of the waiver, bear the burden of demonstrating that the eight statutory requirements are met. 29 U.S.C. § 626(f)(3); see Rupert v. PPG Indus., Inc., Nos. 07cv0705, 08cv0616, 2009 WL 596014, at *38 (W.D. Pa. Feb. 26, 2009). Plaintiff does not contest that the Release referred to his rights or claims under the ADEA, provided additional consideration, informed him of his right to consult an attorney, provided him with twenty-one days to consider the agreement, and provided him with a seven-day period within which to revoke. Plaintiff asserts that defendants failed to meet their burden with respect

7

to the Release being written in a manner calculated to be understood by the individual employee because under other provisions of the OWBPA, the waiver improperly precludes plaintiff from challenging the validity of the waiver.

**2.      *Waivers barring challenges to the effectiveness of releases are ineffective under the OWBPA***

Section 626 (f)(1)(A) requires that releases be "written in a manner calculated to be understood" by the employee. Plaintiff argues that the waiver failed to meet this requirement because it contained provisions that could reasonably be interpreted to prohibit challenges to the validity of the waiver. 29 C.F.R. § 1625.23(b) prohibits the inclusion of provisions limiting a plaintiff's right to challenge the validity of a waiver. It states:

> No ADEA waiver agreement, covenant not to sue, or other equivalent arrangement may impose any condition precedent, any penalty, or any other limitation adversely affecting any individual's right to challenge the agreement. This prohibition includes but is not limited to provisions requiring employees to tender back consideration received, and provisions allowing employers to recover attorney's fees and/or damages because of the filing of an ADEA suit. This rule is not intended to preclude employers from recovering attorney's fees or costs specifically authorized under federal law.

29 C.F.R. § 1625.23(b).  The issue whether the inclusion of a provision precluding an individual from challenging the validity of the waiver runs afoul of the understandability requirement was recently dealt with in Rupert v. PPG Industries, Inc.  In Rupert, the court adopted the report and recommendation of the special master who analyzed the understandability requirement set forth in § 626(f)(1)(A).[3]  Rupert, 2009 WL 596014, at *1.

_____

3.      In support of their argument that the Release met all the enumerated requirements, defendants rely on Stauffer v. Bell Atlantic, No. Civ.A. 01-CV-2892, 2002 WL 32349886, at **4-5 (E.D. Pa. Feb. 20, 2002).  Stauffer, however, did not deal with the applicability of the

Rupert discussed the various regulations that interpret the understandability requirement.

The court observed that 29 C.F.R. § 1625.22(b)(4) interprets the statutory requirements of §

626(f)(1)(A).  Section 1625.22(b)(4) provides:

> ["]The waiver agreement must not have the effect of misleading,
> misinforming, or failing to inform participants and affected
> individuals.  Any advantages or disadvantages described shall be
> presented without either exaggerating the benefits or minimizing
> the limitations.["]

Id. at *38 (quoting 29 C.F.R. § 1625.22(b)(4)).  Rupert construed this regulation in conjunction

with 29 C.F.R. § 1625.23(b). A significant portion of the analysis in Rupert focused on whether

the OWBPA operated merely to void the offending provision of the release or whether an anti-

challenge provision would effectively nullify the entire agreement by running afoul of the

understandability requirement. Rupert, 2009 WL 596014, at **43-49.

The court analyzed the validity of 29 C.F.R. § 1625.23(b) and concluded that it was a

"valid exercise of agency rule-making entitled to deference." Id. at *40.  The court determined

that the releases, as written and individual to that case, were written in a manner which

reasonably could be understood by the average eligible participant to bar a suit challenging the

effectiveness of the release. Id. at **41-43.  The court reviewed applicable case law, statutes,

regulations, and legislative history, to determine whether the ADEA waivers in the releases

could be effective even if the provisions barring a suit challenging the effectiveness of the

release were not. The court concluded that a release written in a manner that reasonably could be

_____

understandability requirement to releases which contained limitations on a plaintiff's ability to
challenge the release.  Stauffer is inapposite to the issue raised here.

understood to bar a challenge to its validity fails to satisfy the understandability requirement of the OWBPA and would  be ineffective as a waiver of ADEA claims. Id. at *49.

In support of this interpretation of the OWBPA and the accompanying regulations, the court discussed Wastak v. Lehigh Valley Health Network, 342 F.3d 281 (3d Cir. 2003) ("Wastak II"), which is cited in support of defendants' argument in the instant case. Rupert, 2009 WL 596014, at **43-45.  The defendants in Rupert similarly cited Wastak II as standing for the proposition that only the offending provision of a release should be stricken, rather than the whole agreement. Wastak II, which dealt with a release that purported to waive the plaintiff's right to file a charge with the EEOC, stated that the offensive charge-filing ban "'could be severed without disturbing the enforceability of the agreement.'" Rupert, 2009 WL 596014, at *44 (quoting Wastak II, 342 F.3d at 292). In discounting Wastak II's applicability, the court noted that the releases involved in the case stemmed from a period before the effective date of 29 C.F.R. §1625.22 and that the Court of Appeals for the Third Circuit in Wastak II had acknowledged the existence and effect of the new regulations, despite their inapplicability to the case before them:

> ["][t]he presence of such a prohibition [against charge-filing] in a waiver agreement that is subject to this regulation could certainly lead a court to find, under proper circumstances, that the waiver 'had the effect of misleading, misinforming, or failing to inform' the plaintiff, 29 C.F.R. § 1625.22(b)(4), thus rendering the waiver not 'knowing and voluntary,' and therefore, invalid.["]

Rupert, 2009 WL 596014, at *44 (quoting Wastak II, 342 F.3d at 293 n.6). The court in Rupert determined that the reasoning in Wastak II did not apply to the challenged releases due to the impact of the intervening regulations, 29 C.F.R. § 1625.22 and 29 C.F.R. § 1625.23.  Rupert, 2009 WL 596014, at *45.

10

The agency commentary accompanying 29 C.F.R. §1625.23 was considered by the court in Rupert.  In its analysis, the court concluded that two comments published in the Federal Register along with the final version of 29 C.F.R. § 1625.23 controlled the interpretation of that regulation.[4]  Rupert, 2009 WL 596014, at *47. The second of the two comments relied upon by the court provides:

> ["]Employers therefore must take precautions in drafting covenants not to sue so that employees understand that the covenants do not affect their right to test the knowing and voluntary nature of the agreements in court under the OWBPA. By investing, [']court[s] of competent jurisdiction['] with the authority to resolve [']any dispute that may arise over * * * the validity of a waiver,['] Congress manifested in the plain language of the statute its intention to permit an employee who signed an ADEA waiver, to sue his or her employer upon the belief that the waiver did not comply with the OWBPA. Thus, **any provision in a waiver agreement that would cause an employee to believe that he or she could not seek a judicial determination of the validity of the waiver misrepresents the rights and obligations of the parties to the agreement. Such a misrepresentation conflicts with the OWBPA requirement that a valid waiver agreement must be [']written in a manner calculated to be understood['] by the employee [']or by the average individual eligible to participate.['] 29 U.S.C. 626(f)(1)(A).**["]

Id. (quoting Waiver of Rights and Claims: Tender Back of Consideration, 65 Fed. Reg. 77438, 77443-44 (Dec. 11, 2000)).[5]

---

4.    The court determined that the comments were entitled to deference under Auer v. Robbins, 519 U.S. 452, 461 (1997), because the commentary interpreted the interaction of two of the EEOC's own regulations, 29 C.F.R. §§ 1625.22 , 1625.23.

5.    The first of the comments stated:

> ["]The final regulation does not address the question of severability because the NPRM did not present the issue, and the record on it is very limited. The Commission believes, however, *that contrary to the position advanced by the employer, there is a strong argument that*

The court reasoned that these comments supported the invalidation of the entire agreement rather than specific provisions because: 1) the EEOC considered its conclusion to be sufficiently fair and published it as part of its final rule-making; 2) there was nothing "equivocal about the EEOC's statement" in the second comment and the EEOC allowed the statement to stand eight years without any qualification or guidance; 3) the comments were not unreasonable or inconsistent with the broad remedial purposes of the ADEA to "invalidate a waiver where the misleading language did not harm the individual plaintiff in order to deter employers generally from including such provisions . . . in their release agreements"; and 4) the language of the OWBPA requires that "at a minimum" all eight of OWBPA's statutory threshold requirements must be present for a release to be "knowing and voluntary."  Rupert, 2009 WL 596014, at **48-49.

This court will follow the reasoning set forth in Rupert.  Plaintiff argues that the Release could have been understood by the individual employee to bar a challenge to the effectiveness or enforceability of the waiver. In making this argument, plaintiff suggests that the inclusion in the Release of the phrase waiving "any and all claims arising under federal, state and/or local statutory, or common law, such as, but not limited to, . . . the Age Discrimination in

---

> inclusion of an invalid provision in an ADEA waiver agreement–such as a tender back clause or a damages provision–should invalidate the entire waiver. Under this point of view, inclusion of such provisions in a waiver would make the agreement misleading in a material sense and thus violate the OWBPA's requirement that waivers be calculated to be understandable by the individual or by the average individual eligible to participate.["]

 Rupert, 2009 WL 596014, at *47 (quoting Waiver of Rights and Claims: Tender Back of Consideration, 65 Fed. Reg. at 77441) (emphasis added).

Employment Act of 1967, [and] the Older Workers Benefit Protection Act" creates the reasonable interpretation that the signer is waiving his right to challenge the validity of the Release under the OWBPA.  (Release ¶ 4.)  The issue before this court, therefore, is whether the clause can reasonably be interpreted, along with others in the Release, to waive the right to challenge the Release. Defendants make several arguments in support of their contention that the Release is valid, including: 1) plaintiff's subjective understanding of the provisions of the Release undermines his claims that the Release could have been understood to bar a challenge to the effectiveness or enforceability of the waiver; and 2) plaintiff's knowledge of invalidity led to intentional misrepresentation (fraud), which pursuant to a duty of good faith and fair dealing and other provisions of Pennsylvania law, creates an exception to the rule barring exceptions to the OWBPA which was recognized in Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998).

### a.      No "exception to the rule" governing validity of waivers

Defendants suggest that this court should adopt an "exception to the rule" protecting against invalid releases under the facts of this case. This court, however, concludes that the case law, statutes, regulations, and commentary do not support defendants' interpretation in situations where a release violates one of the eight statutory OWBPA requirements.

In their brief, defendants argue that "[t]he fact scenario with which this Honorable Court is faced is easily distinguishable from" that in Oubre and Rupert, "and forms the basis of a valid exception-to-the-rule." (Defs.' Reply to Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J.(Docket No. 43) at 3.)  Other than factual differentiation, defendants cite to no federal authority supporting their contention that plaintiff's belief of invalidity, based on the representations of an individual at the EEOC, gives rise to an exception to the requirements of the OWBPA. Under the auspices

13

of Pennsylvania law, defendants argue that plaintiff's behavior amounts to an intentional

misrepresentation or fraud, which under the contract doctrine of a duty of good faith and fair

dealing and other provisions of Pennsylvania law, should give rise to an exception to the

rationale of the Supreme Court in Oubre.

Defendants' arguments are akin to the arguments of the defendants in Oubre. In Oubre,

the employer argued, under general contract principles, that the employee ratified the ineffective

release by retaining all of the sums paid under the release.  Oubre, 522 U.S. at 426. The Supreme

Court rejected this argument stating:  "An employee 'may not waive' an ADEA claim unless the

employer complies with the statute. Courts cannot with ease presume ratification of that which

Congress forbids." Id. at 427.  The court unequivocally stated that "[t]he OWBPA governs the

effect under federal law of waivers or releases on ADEA claims and incorporates no exceptions

or qualifications.  The text of the OWBPA forecloses the employer's defense, notwithstanding

how general contract principles would apply to non-ADEA claims." Id.

This court does not deny that plaintiff, in the instant case, acquired a belief that the

release was invalid from an individual at the EEOC, determined to sign the agreement despite

this belief, and planned to sue defendants. (Dep. of Pl. at 40-42.)  The OWBPA, however, does

contain an exception to the eight statutory requirements. A release must meet the minimum

statutory requirements to be a valid waiver of ADEA rights. See Kruchowski v. Weyerhauser

Co., 446 F.3d 1090, 1095 (10th Cir. 2006) ("'The absence of even one of the OWBPA's

requirements invalidates the waiver.'" (quoting Butcher v. Gerber Prods. Co., 8 F. Supp. 2d 307,

314 (S.D.N.Y. 1998))); Rupert,  2009 WL 596014, at *48 ("OWBPA provides that a waiver

cannot be considered knowing or voluntary unless 'at a minimum' the eight statutory

requirements are satisfied.").[6]

Defendants argue that principles of Pennsylvania law should give rise to an exception to

this rule aimed at plaintiffs who sign a waiver with an understanding that it is invalid. Despite

these contentions, however, the law is clear about the necessity of complying with the eight

statutory requirements.  As noted in Rupert:

> it is not unreasonable or inconsistent with the broad remedial
> purposes of the ADEA to invalidate a waiver where the misleading
> language did not harm the individual plaintiff in order to deter
> employers generally from including such provision limiting the
> right to challenge the validity of a release in their release
> agreements.

Rupert,  2009 WL 596014, at *48.  Oubre essentially forecloses any argument that state law has

any operation on waivers governed by the OWBPA.  Oubre contemplates that "no exceptions or

qualifications" exist with respect to the mandates of the OWBPA. As a result, this court does not

find an exception to the requirements of the OWBPA and will not create one based on plaintiff's

conduct.[7]

---

6.     In their brief, defendants argue that the Release must also be considered under the Pennsylvania common law principle of "totality of the circumstances" to determine whether the Release is valid. They concede, however, that the Release must first meet the minimum statutory requirements set forth in the OWBPA to be "knowing and voluntary" and since one of the eight statutory requirements is implicated here, this court will not address the applicability of the "totality of the circumstances" test.

7.     Plaintiff suggests that, although not mentioned in the opinion, Oubre involved a similar factual scenario to the instant case. Bogacz points to the brief of respondent in the case that cited the plaintiff's deposition where she admitted that she had decided to sue her employer before she signed the agreement, after consulting with two lawyers. U.S. Supreme Court Respondent's Brief at **3-4, Oubre v. Entergy Operations, Inc., 520 U.S. 1185 (1997) (No. 96-1291), 1997 WL 523878. Although this court concludes that the facts involved in either case do not relieve a defendant from complying with the legal mandates of the OWBPA, the argument is noted.

        **b.**     *The Release violates the understandability requirement and is invalid.*

Defendants argue that the Release is drafted in a manner calculated to be understood by the individual employee. They suggest that not only was it written in such a manner, but that its provisions were actually understood by plaintiff.[8] Plaintiff suggests that an objective standard should be utilized in determining whether the Release met the understandability requirement and that it, in fact, does not meet that requirement.

In support of his argument that an objective standard should be utilized, plaintiff turns to the regulations and commentary. As was noted in the discussion of Rupert above, the commentary states that "'any provision in a waiver agreement that would cause an employee to believe that he or she could not seek a judicial interpretation of the validity of the waiver misrepresents the rights and obligations of the parties to the agreement.'" Rupert, 2009 WL 596014, at *47 (quoting Waiver of Rights and Claims: Tender Back of Consideration, 65 Fed. Reg. at 77443-44). The regulations plainly state that "agreements must be drafted in plain

---

8.    Defendants argue that because plaintiff's termination was not part of a reduction-in-force or exit incentive program, his individual understanding of the Release is at issue. Plaintiff does not argue that his termination was a part of either type of program. The court notes that despite their citation to plaintiff's deposition, defendants misconstrue plaintiff's testimony. Plaintiff testified that he understood paragraph two of the Release to continue his salary through January 5, 2007, entitle him to pay for his unused vacation and continue his health benefits. (Dep. of Pl. At 32-33.) He further testified that he understood paragraph three to mean that if he did not sign the agreement he would not get pay or termination benefits and paragraph four to mean that if he signed, he would "not be able to sue the company." (Id. at 33-34.) This general testimony that plaintiff understood he would "not be able to sue the company" does not mean he knew the Release to be invalid. His testimony does not suggest, that when plaintiff first read the document, he understood that he could challenge the validity of the Release. Although plaintiff testified that he was told that the Release was "not worth the paper it was written on," he never testified to interpreting the lease on his own. (Id. at 42.) Plaintiff sought aid to understand the Release by both calling the vice president of HR and by discussing it with the EEOC. Plaintiff's conduct belies the assertion that he "understood" the provisions of the Release.

language geared to the level of understanding of the individual party to the agreement or

individuals eligible to participate." 29 C.F.R. § 1625.22(b)(3). They also advise employers to

take into account factors such as the level of comprehension and education of typical participants

and to eliminate "technical jargon and . . . long, complex sentences." Id.

      These provisions suggest a standard based on what the individual employee *would*

understand not what the individual employee *did* understand. The regulations indicate that the

language be geared "to the level of understanding of the individual party", taking into account

factors such as his level of comprehension and education. They do not indicate that a line by line

analysis of what the plaintiff *did* understand must be undertaken. As noted above, "it is not

unreasonable or inconsistent with the broad remedial purposes of the ADEA to invalidate a

waiver where the misleading language did not harm the individual plaintiff in order to deter

employers generally from including such provisions limiting the right to challenge the validity of

a release in their release agreements." Rupert, 2009 WL 596014, at *48. Within this framework,

it would be inappropriate to determine what the employee actually did understand rather than

what he reasonably could have understood.

      Plaintiff had a degree from community college and worked for many years in sales, but

there is no indication that he had any increased level of comprehension when it came to

employment documents. Plaintiff suggests that defendants' explicit listing of the OWBPA in the

Release could reasonably be interpreted as "caus[ing] an employee to believe that he or she

could not seek a judicial determination of the validity of the waiver."   Rupert, 2009 WL 596014,

at *47 (quoting Waiver of Rights and Claims: Tender Back of Consideration, 65 Fed. Reg. at

77443-44).  The Release set forth its restrictions in paragraph four:

> In return for the above moneys to be paid and benefits to be provided by the Company, the sufficiency of which is hereby acknowledged by you, you agree on behalf of yourself, your heirs, administrators, executors and assigns to **waive, release, and promise** never to assert any or all claims that you have or might have against the Company, it's predecessors, parent corporations, subsidiaries, affiliates, related entities, officers, directors, shareholders, agents, attorneys, employees, successors, or assigns, arising from or related to your employment and/or the termination of your employment. These claims include, but are not limited to, any and all claims, causes of action, suits, claims for attorneys' fees, damages or demands; all claims of discrimination, on any basis, including, without limitation, claims of race, sex, age, ancestry, national origin, religion, and/or disability discrimination; any and all claims arising under federal, state and/or local statutory, or common law, such as, but not limited to, Title VII of the Civil Rights Act as amended, including the amendments to the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, Ohio's laws against discrimination; any and all claims arising under any other state and/or local anti-discrimination statute and the law of contract and tort; and any and all claims, demands and causes of action including, but not limited to, claims of breach of public policy, unjust discharge or breach of contract. You further **waive, release, and promise** never to assert any such claims, even if you presently believe that you have no such claims.

(Release ¶ 4.)

The first sentence of paragraph four reads very broadly and extends to any claims that "you have or might have against the Company . . . arising from or related to your employment and/or the termination of your employment." (Id.)  The Release obviously related to the termination of plaintiff's employment. This first sentence taken together with the later clause proposing to bar "any and all claims arising under federal, state and/or local statutory, or common law, such as . . . the Age discrimination in Employment Act of 1967, [and] the Older Workers Benefit Protection Act" could cause confusion about whether an enforceability action

was barred. (Id.)  Since the only practical avenue available to plaintiffs when challenging the validity of a release as ineffective under the OWBPA is to file a lawsuit against the employer asserting age discrimination claims and in that context to assert their OWBPA compliance challenge, the bringing of any claims under the ADEA, as amended by the OWBPA, could reasonably have been understood to be intertwined with a challenge to the validity of a waiver.[9] It would be reasonable to conclude that the Release barred a challenge to the effectiveness of plaintiff's Release.  Under those circumstances, the Release is written in a manner calculated to be understood by the individual employee as barring a challenge to the validity of the Release. As such, the Release is invalid and summary judgment cannot be granted in favor of defendants.

### Conclusion

For the reasons set forth above, the Release is invalid.  Defendants' motion for summary judgment must be denied.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

Dated: March 9, 2010

---

9.        See Baker v. Washington Group Int'l, Inc., No. 1:06-CV-1874, 2008 WL 351396, at **2-3 (M.D. Pa., Feb. 7, 2008) (The OWBPA does not create a separate cause of action and must only be asserted in conjunction with allegations of age discrimination under the ADEA.); Welch v. Maritrans Inc., No. 00-2606, 2001 WL 73112, at *8 (E.D. Pa. Jan. 25, 2001) (The OWBPA does not give rise to a separate claim, but merely renders "agreement[s] entered into regarding an employee's waiver of liability invalid.  This prevents employers from enforcing the waiver and the employee may proceed to court with any legitimate ADEA claim . . . .").